IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WESTFIELD INSURANCE COMPANY | : : : | |
| Plaintiff, | : : | Case No. 4:15-cv-00539 |
| v. | : : : | |
| ICON LEGACY CUSTOM MODULAR HOMES and ICON LEGACY | : : : : | (Judge Brann) |
| Defendant. | : : | |

# MEMORANDUM
July 30, 2015

Defendant Icon Legacy Custom Modular Homes, LLC[1] ("Icon") has filed a Motion to dismiss Plaintiff Westfield Insurance Company's ("Westfield") Complaint. (ECF No. 9). For the reasons discussed below, Icon's Motion to dismiss is denied.

## I. BACKGROUND[2]

Westfield, an insurance company, issued a policy of insurance to Icon, a manufacturer of modular homes, under policy Number TRA5738595 (the "Policy") in Selinsgrove, Pennsylvania. (ECF No. 1, ¶ 7). The Policy covered a

---

[1] Icon asserts that defendant Icon Legacy does not exist. (ECF No. 9, n. 1).
[2] The allegations presented in Westfield's Complaint are taken as true, and all inferences are construed in the light most favorable to Westfield. See, Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984); Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993).

term from July 29, 2011 through "at least" July 29, 2014.  Id. at ¶¶ 62-63.  The Policy generally provides coverage against property damage and bodily injury with certain enumerated exceptions.  Id. at ¶¶ 64-72.

Two complaints have been filed against Icon that implicate the Policy.  On June 11, 2014, Bilal Ahmad ("Ahmad") filed suit against Icon in the Supreme Court of New York, County of Otsego (the "New York Complaint").  Id. at Ex. A.  Thereafter, on November 4, 2014, Anthony and Melanie Messana (the "Messanas") filed suit against Icon in the Massachusetts Superior Court, County of Essex (the "Massachusetts Complaint").  Id. at Ex. C.

Both Ahmad and the Messanas assert causes of actions against Icon and its codefendants relating to the assembly and siting of modular housing units that were supplied by Icon.  Id. at Ex. A, C.  In the New York Complaint, Ahmad avers that his home is "torqueing and/or shifting" and that Icon negligently and/or recklessly assembled and incorrectly manufactured the home.  Id. at Ex. A, ¶ 26.  Ahmad and the Messanas assert causes of actions against Icon and its codefendants relating to the assembly and siting of modular housing units that were supplied by Icon.  Id. at Ex. A, C.  Icon has tendered claims for defense and indemnity to Westfield in connection with both the Ahmad Complaint and the Messanas Complaint.  Id. at ¶¶ 40, 61.  Westfield is currently defending Icon in both state court actions, subject to a reservation of rights.  Id.

On March 17, 2015, Westfield filed this action, seeking a declaratory judgment decreeing that Westfield need not defend or indemnify Icon in either the New York or Massachusetts actions. (ECF No. 1). Westfield argues that the claims either: (1) do not amount to an occurrence under the Policy; (2) do not fall within the Policy's coverage provided by specific endorsement; (3) are barred by Policy exclusions; (4) are barred from coverage under Pennsylvania law; or (5) arose before or after Policy coverage began. Id. at ¶¶ 74-121.

**II. DISCUSSION**

Icon Legacy has moved to dismiss the Complaint on the sole ground that this Court should decline to exercise its discretionary jurisdiction under the Declaratory Relief Act. (ECF No. 9). Westfield in turn argues that balancing the relevant factors as a whole favors this Court retaining jurisdiction. (ECF No. 12).

Title 28 U.S.C. § 2201 provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." "In providing the remedy of a declaratory judgment it was the Congressional intent 'to avoid accrual of avoidable damages to one not certain of his rights and to afford him an early adjudication without waiting until his adversary should see fit to begin suit, after damage had accrued.'" Interdynamics, Inc. v. Firma Wolf, 698 F.2d 157, 164-65 (3d Cir. 1982) (quoting

Dewey & Almy Chem. Co. v. Am. Anode, Inc., 137 F.2d 68, 69–70 (3d Cir. 1943), *cert. denied*, 320 U.S. 761 (1943)).

The United States Court of Appeals for the Third Circuit has repeatedly "emphasized that the Act should have a liberal interpretation, bearing in mind its remedial character and the legislative purpose." Id. In that regard, Section 2201 has been interpreted "as granting to the district court the discretion whether to award declaratory relief[.]" Id. at 167 (citing Bituminous Coal Operators' Ass'n, Inc. v. Int'l Union, United Mine Workers, 585 F.2d 586, 596 (3d Cir. 1978)).

In exercise discretion, district courts should consider several non-exhaustive factors, including:

> (1) the likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy; (2) the convenience of the parties; (3) the public interest in settlement of the uncertainty of obligation; (4) the availability and relative convenience of other remedies; (5) a general policy of restraint when the same issues are pending in a state court; (6) avoidance of duplicative litigation; (7) prevention of the use of the declaratory action as a method of procedural fencing or as a means to provide another forum in a race for *res judicata;* and (8) (in the insurance context), an inherent conflict of interest between an insurer's duty to defend in a state court and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion.

Reifer v. Westport Ins. Corp., 751 F.3d 129, 146 (3d Cir. 2014). Although no single factor is dispositive, "the absence of pending parallel state proceedings militates significantly in favor of exercising jurisdiction[,]" while "[t]he existence

of pending parallel state proceedings militates significantly in favor of declining jurisdiction." Id. at 144-45.

Furthermore, federal court should be hesitant "in exercising jurisdiction over declaratory judgment actions when the state law involved is close or unsettled" or where declining to exercise jurisdiction "would promote judicial economy by avoiding duplicative and piecemeal litigation." State Auto Ins. Companies v. Summy, 234 F.3d 131, 135 (3d Cir. 2000), as amended (Jan. 30, 2001) (internal citations omitted). "Moreover, district courts should give serious consideration to the fact that they do not establish state law, but are limited to predicting it." Id.

### A.   The Likelihood of a Resolution of Westfield's Obligations

First, a determination by this Court in a declaratory judgment action would resolve the uncertainty regarding Westfield's obligations to Icon. The only question presented to this Court is whether Westfield is required to continue defending Icon and indemnify Icon for any damages that may be awarded to the plaintiffs in the New York and Massachusetts actions. (ECF No. 1). A determination by this Court would either end Westfield's need to continue defending Icon in the state actions, or would compel Westfield to continue its defense of Icon. It would further settle Westfield's obligation to indemnify Icon under the Policy.

Furthermore, this action would resolve the relevant dispute in a way that the pending state court actions would not. The state court actions will ultimately determine the liability of Icon, but will not determine Westfield's need to indemnify Icon for those damages. Thus, this factor weighs in favor of the Court retaining jurisdiction.

### B.   Convenience of the Parties

Second, neither party would be seriously inconvenienced by the declaratory action proceeding in federal court. While the Court recognizes that some fact-intensive discovery may be needed to resolve the underlying issues in this case,[3] such discovery would not be overly burdensome. Most of the discovery that may be relevant to this action would similarly be relevant in the New York and Massachusetts state court actions, as the question of whether Icon is covered under the Policy would likely turn on the facts of each case. Therefore, most of the necessary discovery materials would be produced during the state court litigation.

---

[3] The Court cannot accept Westfield's argument that Pennsylvania law "undoubtedly applies" and directs that only the allegations of the two state court complaints govern whether the Policy is implicated in this matter. See (ECF No. 12, pp.10-11). Because this is a diversity case, this Court does apply Pennsylvania choice-of-law-rules. Hammersmith v. TIG Ins. Co., 480 F.3d 220, 226 (3d Cir. 2007) (citing Klaxon v. Stentor Elec. Mfg. Co., 313 U.S. 487 (1941)). Contrary to Westfield's argument, insurance contracts are not always governed by the law of the state where the policy is delivered and the insured resides; rather, courts must "apply the law of the forum with the 'most interest in the problem[.]'" Id. at 227 (quoting Griffith v. United Air Lines Inc., 203 A.2d 796, 806 (Pa. 1964)). Thus, it is not entirely clear at this point in time which state substantive law would apply, nor whether such law would require the Court to delve into complex factual issues to resolve this action. For that same reason this Court cannot now accept Icon's argument that resolution of this matter will involve close, unsettled issues of state law.

The small amount of discovery that may need to be conducted separate and apart from the state court litigation would need to be conducted regardless of whether this Court exercises jurisdiction.  If Icon were found liable, the parties to this action would need to litigate the issues presented here, and would need to conduct the additional discovery at that point in time.  However, conducting the discovery in this case would eliminate the need to argue these issues before two different courts, and therefore would ultimately convenience both parties.  Additionally, refusing jurisdiction would force Westfield to continue defending Icon despite the possibility that Westfield is not legally obligated to do so.  In the event that Icon prevailed in the state court actions, Westfield would then likely need to engage in litigation to recoup any monies expended in those cases.

Finally, there does not appear to be any reason at the moment why this action cannot be resolved on papers rather than through a hearing.  This would alleviate any inconvenience to the parties or their witnesses, as any testimony could be presented through the use of depositions.  Of course, it may be that a hearing is needed in this matter, but it is simply too early in the course of litigation to reach such a conclusion.  In sum, the inconvenience to the parties here is minimal, and is outweighed by the convenience gained in litigating the matter in one hearing before one court.  Consequently, at this stage in litigation this factor weighs slightly in favor retaining jurisdiction.

### C. Public Interest in Settling Uncertainty of Westfield's Obligation

Under the public interest factor, Icon argues that this Court should decline jurisdiction because its "resources and time would be better suited resolving matters that must be brought before this Court and that affect the individuals who reside and work in this Court's jurisdiction." (ECF No. 11, p. 9). In turn, Westfield argues that litigating this issue in one forum rather than two serves the ends of judicial economy, and therefore benefits the public interest. (ECF No. 12, p. 12). Neither argument provides a terribly compelling reason for the Court to either maintain or relinquish jurisdiction, and therefore this factor is neutral.

### D. Availability and Relative Convenience of Other Remedies

Fourth, there is no available remedy to resolve this issue other than either: (1) filing an action for a declaratory judgment in New York and/or Massachusetts, or (2) waiting for both state court actions to conclude, then waiting for a garnishment action to be filed against Westfield in both cases. Neither option would present a more convenient remedy; the former would be nearly identical in character and convenience to this action, while the latter would force Westfield to litigate this issue in two separate forums. Therefore, this factor weighs slightly in favor of exercising jurisdiction over this matter.

### E. Whether the Same Issues are Pending in State Court and the Avoidance of Duplicative Litigation

Fifth and most significantly, there is no pending parallel state court litigation that addresses the issues presented in this case.[4] In that regard, Icon admits in its brief that "[a]t this point in time, the state court actions are not completely parallel to this action initiated by Westfield." (ECF No. 11, p. 10). Westfield is not a party to either the New York or the Massachusetts actions, and therefore those actions cannot fully adjudicate the matters in controversy between Icon and Westfield. Additionally, no party in those actions has raised the issue of Westfield's duty to defend or indemnify Icon. It is certainly true that the state court proceedings may involve many of the same factual issues as this case. However, the state court litigation will not resolve the fundamental dispute at issue here – whether Westfield must continue to defend Icon and possibly indemnify Icon for any damages awarded in the state court actions.

Icon argues that, if it is found liable in the future, Ahmad and the Messanas may pursue garnishment proceedings in state court, thereby creating a parallel proceeding. (ECF No. 11). The Court rejects any notion that this speculative future action militates against retaining jurisdiction. In addition to the fact that any such proceeding is purely speculative at this point in time, since it would not arise if Icon were found not liable, such a proceeding does not implicate the "general

---

[4] "The Supreme Court has described a 'parallel' proceeding as 'another proceeding . . . pending in a state court in which all the matters in controversy between the parties could be fully adjudicated.'" Reifer v. Westport Ins. Corp., 751 F.3d 129, 137 n. 9 (3d Cir. 2014) (quoting Brillhart v. Excess Ins. Co. of Am., 316 U.S. 491, 495 (1942)).

policy of restraint when the same issues are *pending* in a state court[.]" Reifer, 751 F.3d at 146 (emphasis added).  A garnishment proceeding would be a new, separate action rather than a pending case, and therefore does not implicate the concerns expressed in Reifer.  Furthermore, dismissing the declaratory action on this basis would force Westfield to fully defend the state court actions and expend considerable resources without any assurance of recovering those resources in the future.

In sum, there is no pending parallel state action, and "the absence of pending parallel state proceedings militates significantly in favor of exercising jurisdiction." Reifer v. Westport Ins. Corp., 751 F.3d 129, 144-45 (3d Cir. 2014). Consequently, this factor weighs heavily in favor of retaining jurisdiction.[5]  Sixth, for many of the same reasons, this action would not result in duplicative litigation. As noted previously, the legal issues at stake in this case are different from the legal issues implicated by the state court litigation and most of the discovery that would need to be conducted could likely be completed in the state court

---

[5] Westfield's argument that the absence of pending parallel litigation creates "a rebuttable presumption" of retaining jurisdiction is unfounded.  First, the existence of any such presumption would necessarily impede the Court's ability "to exercise a reasoned discretion" in the matter, Reifer, 751 F.3d at 140, by removing much of the discretion granted to the district court. Additionally, such an interpretation would run counter to the Third Circuit's express language in Reifer, where the court stated "[w]e do not read Summy to create a rule that tethers a district court's DJA discretion to whether a party has or has not filed a parallel action in state court." Id. at 144.  Consequently, although the absence of parallel proceedings weighs more heavily than the other factors, it does not create any presumption, rebuttable or not, that a court must retain jurisdiction.

proceedings. Therefore, the absence of duplicative litigation weighs slightly in favor of retaining jurisdiction over this matter.

### F. Procedural Fencing

Seventh, there is no suggestion in this case that procedural fencing or forum selection played any role in Westfield choosing this venue to litigate its concerns. Rather, it appears that this venue was chosen due to the fact that Icon's "principal place of business [is located] at 246 Sand Hill Road, Selinsgrove, Pennsylvania 17870" which is within the jurisdiction of District Court for the Middle District of Pennsylvania. (ECF No. 1, ¶ 3). Therefore, this factor is neutral, and does not weigh in favor of dismissing the Complaint.

### G. Inherent Conflict of Interest for Westfield

Finally, there does not appear to be any inherent conflict of interests in Westfield pursuing this action while simultaneously defending Icon in the state court actions. Westfield need not argue against Icon's interesting in this action; it is merely arguing that any liability on Icon's part is not covered under the Policy. This involves a comparison of the Policy language with the state court complaints, and possibly any facts uncovered through discovery. The arguments necessary to fully litigate this action do not conflict with Westfield's need to argue in the state court actions that Icon is not liable at all. Therefore, this factor is likewise neutral.

Consequently, after balancing the eight factors provided by the Third Circuit in <u>Reifer</u>, 751 F.3d 129, the Court concludes that it should exercise its discretionary authority to maintain jurisdiction over this matter. The fact that no pending parallel state court litigation is ongoing "militates significantly in favor of exercising jurisdiction." <u>Id.</u> at 144. When considered alongside the absence of duplicative litigation, the availability and convenience of other remedies, and the strong likelihood that this action will settle the controversy between the parties, the balance of factors tips in favor of exercising jurisdiction over this matter. Therefore, Icon's Motion to dismiss will be denied. The Court notes, however, that much of the foregoing analysis has been conducted without the benefit of any factual record and, as a result, much of this analysis is subject to change when the factual record is better developed. As such, Icon's Motion will be dismissed without prejudice as to its right to refile a similar motion in the future.

### III. CONCLUSION

For the foregoing reasons, Icon's Motion to dismiss is denied without prejudice. An appropriate Order will follow.

BY THE COURT:

/s Matthew W. Brann
Matthew W. Brann
United States District Judge