# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WESTFIELD INSURANCE COMPANY, : | | No. 4:15-cv-00539 |
| : | | |
| Plaintiff, : | | (Judge Brann) |
| : | | |
| v. : | | |
| : | | |
| ICON LEGACY CUSTOM MODULAR : | | |
| HOMES AND ICON LEGACY, : | | |
| : | | |
| Defendants. : | | |

## MEMORANDUM

## August 29, 2016

## I.    BACKGROUND[1]

For all of its procedural machinations, the facts of this case are rather

straightforward. Defendant was sued in two separate state court proceedings in

New York and Massachusetts, and Plaintiff, its insurer, agreed to defend it as to

those actions subject to a reservation of rights. Plaintiff then initiated this action

in federal court, seeking a declaration that it owes Defendant no defense or

indemnity under the subject policy as to those actions.

---

[1]    The following facts are gleaned from, and viewed in the light most favorable to, the
non-moving party's brief in opposition to the motion to dismiss. ECF No. 34.

When Defendant was sued for a third time, now in Vermont state court, Plaintiff in turn amended its federal court complaint and sought a similar declaration as to the newly filed Vermont action. In response, Defendant filed a counterclaim alleging that Plaintiff's decision to deny coverage as to the Vermont action was made in bad faith, a claim that has essentially forestalled determination of the underlying breach of contract claims. Plaintiff thereafter filed a motion to dismiss, arguing that Defendant has failed to plausibly plead sufficient facts supporting its bad faith claim.

The central issue on that motion is therefore not the viability of Plaintiff's explanation for its refusal to cover—that is a matter for a different day and perhaps, for extrajudicial determination. Instead, I must only determine whether the Defendant has alleged facts plausibly suggesting bad faith on Plaintiff's part. It has not. In fact, considering the sparse allegations in combination with Plaintiff's thorough letter explaining its refusal to cover, I am convinced that the insurance bad faith claim should be dismissed with prejudice.

II.    LAW

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may file a motion to dismiss for "failure to state a claim upon which relief can be granted."

Such a motion "tests the legal sufficiency of a pleading" and "streamlines litigation by dispensing with needless discovery and factfinding."[2] "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law."[3] This is true of any claim, "without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one."[4]

Beginning in 2007, the Supreme Court of the United States initiated what some scholars have termed the Roberts Court's "civil procedure revival" by significantly tightening the standard that district courts must apply to 12(b)(6) motions.[5] In two landmark decisions, <u>Bell Atlantic Corporation v. Twombly</u> and <u>Ashcroft v. Iqbal</u>, the Roberts Court "changed . . . the pleading landscape" by "signal[ing] to lower-court judges that the stricter approach some had been taking was appropriate under the Federal Rules."[6] More specifically, the Court in

---

[2]  <u>In re Hydrogen Peroxide Litigation</u>, 552 F.3d 305, 316 n.15 (3d Cir. 2008) (Scirica, C.J.) (quoting <u>Szabo v. Bridgeport Machines, Inc.</u>, 249 F.3d 672, 675 (7th Cir. 2001) (Easterbrook, J.)). <u>Neitzke v. Williams</u>, 490 U.S. 319, 326–27 (1989).

[3]  <u>Neitzke</u>, 490 U.S. at 326 (citing <u>Hishon v. King & Spalding</u>, 467 U. S. 69, 73 (1984)).

[4]  <u>Neitzke</u>, 490 U.S. at 327.

[5]  Howard M. Wasserman, <u>The Roberts Court and the Civil Procedure Revival</u>, 31 Rev. Litig. 313 (2012).

[6]  550 U.S. 544 (2007); 556 U.S. 662, 678 (2009). Wasserman, <u>supra</u> at 319–20.

these two decisions "retired" the lenient "no-set-of-facts test" set forth in <u>Conley</u>

<u>v. Gibson</u> and replaced it with a more exacting "plausibility" standard.[7]

Accordingly, after <u>Twombly</u> and <u>Iqbal</u>, "[t]o survive a motion to dismiss, a

complaint must contain sufficient factual matter, accepted as true, to 'state a

claim to relief that is plausible on its face.'"[8] "A claim has facial plausibility when

the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged."[9] "Although the

plausibility standard does not impose a probability requirement, it does require a

pleading to show more than a sheer possibility that a defendant has acted

unlawfully."[10] Moreover, "[a]sking for plausible grounds . . . calls for enough

facts to raise a reasonable expectation that discovery will reveal evidence of

[wrongdoing]."[11]

---

[7]   <u>Iqbal</u>, 556 U.S. at 670 (citing <u>Conley v. Gibson</u>, 355 U.S. 41 (1957)) ("[a]cknowledging that <u>Twombly</u> retired the <u>Conley</u> no-set-of-facts test").

[8]   <u>Iqbal</u>, 556 U.S. at 678 (quoting <u>Twombly</u>, 550 U.S. at 570).

[9]   <u>Iqbal</u>, 556 U.S. at 678.

[10]   <u>Connelly v. Lane Const. Corp.</u>, 809 F.3d 780, 786 (3d Cir. 2016) (Jordan, J.) (internal quotations and citations omitted).

[11]   <u>Twombly</u>, 550 U.S. at 556.

The plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[12] No matter the context, however, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"[13]

When disposing of a motion to dismiss, a court must "accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the plaintiff]."[14] However, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions."[15] "After Iqbal, it is clear that conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss."[16] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[17]

---

[12] Iqbal, 556 U.S. at 679.

[13] Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557 (internal quotations omitted)).

[14] Phillips v. Cnty. of Allegheny, 515 F.3d 224, 228 (3d Cir. 2008) (Nygaard, J.).

[15] Iqbal, 556 U.S. at 678 (internal citations omitted).

[16] Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (Nygaard, J.).

[17] Iqbal, 556 U.S. at 678.

As a matter of procedure, the United States Court of Appeals for the Third

Circuit has instructed that:

> Under the pleading regime established by <u>Twombly</u> and <u>Iqbal</u>, a
> court reviewing the sufficiency of a complaint must take three steps.
> First, it must tak[e] note of the elements [the] plaintiff must plead to
> state a claim. Second, it should identify allegations that, because
> they are no more than conclusions, are not entitled to the
> assumption of truth. Finally, [w]hen there are well-pleaded factual
> allegations, [the] court should assume their veracity and then
> determine whether they plausibly give rise to an entitlement to
> relief.[18]

## III.   ANALYSIS

### A.   Pennsylvania Law Applies To The Resolution Of Defendant's Insurance Bad Faith Counterclaim, Because Pennsylvania Has A Strong Interest In Protecting Its Insured Residents And Because The Eventual Economic Impact Of The Uninsured Claims Would Be Felt By The Defendant In Pennsylvania.

"In the absence of a specific federal policy or interest dictating the use of

federal choice of law rules, it is well settled in this Circuit that a [ ] court faced

with the issue of which substantive state law to apply to a claim for relief in an

adversary proceeding applies the choice of law rules of the forum state."[19] I

therefore turn to the choice of law rules of the Commonwealth of Pennsylvania

to determine which state law should be applied.

---

[18] <u>Connelly</u>, 809 F.3d at 787 (internal quotations and citations omitted).

[19] <u>Id.</u>

Pennsylvania's choice-of-law analysis follows a "flexible rule which permits analysis of the policies and interests underlying the particular issue before the court."[20] Under this approach, Pennsylvania courts are to apply the law of the forum with the 'most interest in the problem,' rather than the law of the place of injury."[21] "We must first determine whether there is a true conflict between the relevant laws."[22] "If a true conflict exists, the Court must then determine which state has the greater interest in the application of its law."[23]

However, as the Third Circuit has explained, "[i]f two jurisdictions' laws are the same, then there is no conflict at all, and a choice of law analysis is unnecessary."[24] Thus, "if there are no relevant differences between the laws of the two states, or the laws would produce the same result . . . the court does not have to engage in a choice of law analysis, and may refer to the states' laws interchangeably."[25]

---

[20]   Specialty Surfaces Int'l, Inc. v. Cont'l Cas. Co., 609 F.3d 223, 229 (3d Cir. 2010) (quoting Griffith v. United Air Lines, Inc., 416 Pa. 1, 21, 203 A.2d 796, 805 (1964)).

[21]   Hammersmith v. TIG Ins. Co., 480 F.3d 220, 227 (3d Cir. 2007) (quoting Griffith, 203 A.2d at 806).

[22]   Specialty Surfaces, 609 F.3d at 230.

[23]   Hammersmith, 480 F.3d at 231 (internal citation and quotation marks omitted).

[24]   Id. at 230.

[25]   Id. at 229.

Although the Defendant has devoted several pages to an enumeration of insurance bad faith claims in every state whose rules could conceivably apply to the instant dispute, it is not evident to the Court that the laws of those states materially differ. This is particularly true as to the ultimate determination regarding the type of culpability that constitutes bad faith. Tellingly, Defendant believes it has stated a plausible claim under every state's law to which it cites. If true, that proposition means that one (or perhaps both) of two consequents must also be true: either (1) the laws of the cited jurisdictions do not materially differ; or (2) Defendant has pled an exceptionally strong insurance bad faith claim sufficient to satisfy even the most demanding common law rubrics. Based upon my review of the matter, the former option is likely the more genuine characterization of the situation.

Nevertheless, the parties have requested—and the shared interest in a "just, speedy, and inexpensive" disposition of this matter requires—that this Court provide some semblance of clarity as to the issue of applicable law before this matter proceeds much further. Alternating among the elements and procedural requirements for a common law tort as expressed in five distinct states is, in my view, ill-advised. Moreover, it would not be unimaginable for

detailed briefing on this issue to later reveal certain procedural or substantive nuances between certain of these states' laws capable of altering the parties' rights. Considering the facts available to the Court, I now hold that the law of the Commonwealth of Pennsylvania applies to this dispute.

The Third Circuit has characterized Pennsylvania's choice of law analysis "as a combination of the approaches of both the Restatement II (contacts establishing significant relationships) and interests analysis (qualitative appraisal of the relevant States' policies with respect to the controversy)."[26] Specifically, "[t]he law applicable to the interpretation of insurance policies is the same as that which applies to contracts. Contracts mean what the parties intend."[27] In Hammersmith v. TIG Insurance Co., for example, the Third Circuit applied § 188 of the Restatement (Second) of Conflict of Laws to resolve a conflict arising under Pennsylvania state choice of law analysis. That section, entitled "Law Governing in Absence of Effective Choice by the Parties," provides the following factors for a court's consideration in cases involving disputes arising from commercial contracts:

---

[26]   Hammersmith, 480 F.3d at 231.

[27]   Quinney v. Am. Modern Home Ins. Co., 145 F. Supp. 2d 603, 607 (M.D. Pa. 2001) (Caputo, J.).

(a)     the place of contracting,

(b)     the place of negotiation of the contract,

(c)     the place of performance,

(d)     the location of the subject matter of the contract, and

(e)     the domicile, residence, nationality, place of incorporation and place of business of the parties.

The first wrinkle in this analysis, however, is the apparent distinction between breach of contract claims, which follow the above choice-of-law analysis, and insurance bad faith claims, which although owing their genesis to some underlying insurance agreement, typically employ a choice-of-law analysis centered more closely on the residence of the insured. United States Magistrate Judge Martin C. Carlson of this Court examined this distinction in Davis v. Geico General Insurance Co., a 2013 report and recommendation adopted by the Honorable Christopher C. Conner. In Davis, Judge Carlson explained:

> In addition, although the parties do not address this issue, we note that in some cases it is entirely appropriate for a federal court sitting in diversity to conduct separate analyses to determine which state's law should apply to a bad-faith claim, where another state's law may arguably apply to a separate issue of contract interpretation. See Robeson Indus. Corp. v. Hartford Accident & Indem. Co., 178 F.3d 160, 168 (3d Cir.1999) ("[C]onflict of laws principles do not require that all legal issues presented by a single case be decided under the law of a single state. Instead the choice of law decisions can and should be made on an issue-by-issue basis, and thus the law

of different states can apply to different issues in the same case."). We believe this observation in <u>Robeson</u> has force in this case, where the defendants have moved only to dismiss the plaintiff's bad-faith claim in Count II of the complaint, where this particular claim did not accrue until the plaintiff became a Pennsylvania resident, and where the bad-faith claim arose out of a dispute with the plaintiff's insurance company that began in Pennsylvania.[28]

Previously, in <u>Kilmer v. Connecticut Indemnity Co.</u>, then Chief Judge Thomas I. Vanaskie, writing for this Court, held that Pennsylvania law applied as to an insurance bad faith claim brought by a Pennsylvania couple against a Connecticut insurer, after a fire destroyed the couple's New York ski lodge.[29] In <u>Kilmer</u>, Judge Vanaskie cited to § 193 of the Restatement (Second) of Conflicts of Law. That section, entitled "Contracts of Fire, Surety or Casualty Insurance," provides as follows:

> The validity of a contract of fire, surety or casualty insurance and the rights created thereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship . . . to the transaction and the parties, in which event the local law of the other state will be applied.

Judge Vanaskie noted that although the location of the insured risk (the New York ski lodge) was undisputed, several factors existed that counseled for

---

[28]   957 F. Supp. 2d 544, 551 (M.D. Pa. 2013).

[29]   189 F. Supp. 2d 237, 239–40.

application of the law of Pennsylvania, the home state of the insureds.  Judge

Vanaskie listed those factors:

> (1)     the [plaintiffs] are both domiciled and reside in Pennsylvania;
>
> (2)     the insurance policy in question was negotiated in Pennsylvania;
>
> (3)     the agent through whom the policy was issued is located in Pennsylvania;
>
> (4)     the premium was paid in Pennsylvania;
>
> (5)     the insurance company who issued the policy is licensed in Pennsylvania;
>
> (6)     the insurance company who issued the policy is competing with other insurance companies domiciled and doing business in Pennsylvania; and
>
> (7)     the [plaintiffs] naturally expected the laws of Pennsylvania to protect them.[30]

According to Judge Vanaskie, "[b]ecause the protection of insured parties

is the primary public policy behind laws governing duties owed by an insurer to

an insured," Pennsylvania law applied regardless of the out-of-state location of

the subject property.[31] As the court continued, "[t]he Third Circuit has made

clear that the protection of insured parties is the primary public policy

---

[30]   Kilmer v. Connecticut Indem. Co., 189 F. Supp. 2d 237, 245 (M.D. Pa. 2002).

[31]   Id. at 245 (quoting Gen. Star Nat. Ins. Co. v. Liberty Mut. Ins. Co., 960 F.2d 377, 379 (3d Cir. 1992)).

underlying laws governing duties owed by an insurer to an insured."[32] In

particular, Judge Vanaskie explained that "with regard to Pennsylvania's bad

faith statute, courts have held that the policy behind [it] . . . is that the

Pennsylvania legislature was concerned about protecting its own

residents/insured from overreaching insurance companies."[33] As such, he

concluded that "under its conflict of laws principles, in order to ensure that the

insured parties are protected from the bad faith of an insurer, Pennsylvania

would apply its own local law on the issue of whether [the insurer] acted in bad

faith in its handling of [plaintiffs'] insurance claim."[34]

     I find Judge Vanaskie's decision in <u>Kilmer</u> persuasive for two reasons.

First, it clearly prioritizes the factors for district courts to balance when

confronted with a choice of law analysis in the insurance bad faith context. It

leaves little doubt that primary factor to be considered is the state of residence of

the insured, guided by the policy motive that the insured's home state enjoys a

---

[32]  <u>Id.</u> at 246.

[33]  <u>Id.</u> at 246–47 (citing <u>Celebre v. Windsor–Mount Joy Mut. Ins. Co.</u>, No. CIV. A. 93–5212, 1994 WL 13840, *2 (E.D.Pa. Jan.14, 1994) (citing <u>Thomson v. Prudential Prop. & Cas. Ins. Co.</u>, Civ. A. No. 91–4073, 1992 WL 38132, *4 (E.D.Pa. Feb.20, 1992)) ("Pennsylvania has a great interest in protecting its residents from possible misconduct of insurance carriers operating within its borders.").

[34]  <u>Id.</u> at 247.

significant interest in ensuring its citizens' rights vis-à-vis those of insurers. In this case, those factors point toward the applying Pennsylvania law, the state of Defendant's incorporation as well as its principal place of business.

Moreover, <u>Kilmer</u> speaks to a second wrinkle in the choice-of-law analysis. Specifically, how is a court's analysis affected where the state residency of the insured ultimately differs from that of the location of the real property forming the basis for the underlying insurance contract? Judge Vanaskie's analysis makes clear that such disparity has little effect upon the choice-of-law analysis, leaving the residency of the insured as the dominating factor in the insurance bad faith context.

I consider that analysis to set forth a clear rule, which happens to be supported by the practical aspects of an insurance contract. Most apparently, the rule set forth in <u>Kilmer</u> and applied again here promotes business certainty, a concept that Judge Vanaskie recognized stems from a legal rule's "predictability."[35] When an insurer contracts out its services and agrees to reimburse the other party in the event of an accident or similar disaster, it must have some sense as to which state's laws will govern future coverage decisions.

---

[35]   <u>Id.</u> at 246.

Otherwise, an insurer who contracts with a manufacture whose ultimate products make it to every state in the country would have little more guidance as to the rules of good faith denials than could be gleaned from a random dart throw. If one of its purposes is to grease the wheels of commerce, our law must chart a clearer path.

In the analogous context of bad faith failure to settle claims, the United States Court of Appeals for the Eighth Circuit authored a decision in 2012 that contributed to clarity in the choice-of-law analysis for bad faith claims alleged against insurers. In that case, an excess insurer sued a primary insurer for bad faith failure to settle.[36] Both businesses insured a trucking company that was involved in a fatal highway accident.[37] After the primary carrier neglected to settle the underlying personal injury matter, a jury returned a verdict that exposed the excess carrier to a $17 million liability.[38]

The Eighth Circuit clarified that regardless of the site of the traffic incident or the ultimate verdict, the location of the injury in a bad faith insurance claim

---

[36]   Am. Guarantee & Liab. Ins. Co. v. U.S. Fid. & Guar. Co., 668 F.3d 991, 993 (8th Cir. 2012).

[37]   Id.

[38]   Id.

was the insured's place of business—"the place where an economic injury occurs because it is where the economic impact is felt."[39] "We agree," the Eighth Circuit wrote, that "the place where an insured feels the economic impact of an excess verdict is the place where an injury occurs for purposes of a . . . choice-of-law inquiry in a bad faith failure-to-settle case."[40]

Other federal courts in Pennsylvania have taken similarly bright-line approaches to the choice-of-law determination in insurance bad faith cases. For instance, in Asplundh Tree Expert Co. v. Pac. Employers Ins. Co., the United States District Court for the Eastern District of Pennsylvania clarified that the factor that mattered the most was not the state in which denial occurred, but the state "where the failure to receive the allegedly expected benefits was felt."[41] Again, in Celebre v. Windsor–Mount Joy Mutual Insurance Company, the same court applied the law of the state where the insured was doing business and therefore where "the loss occurred."[42]

---

[39]   Id. at 997 (internal quotation marks and citations omitted).

[40]   Id.

[41]   No. CIV. A. 90-6976, 1991 WL 147461, at *7 (E.D. Pa. July 25, 1991)

[42]   Id.

Lastly, in <u>Continental Casualty Co. v. Diversified Industries., Inc.,</u> the same district court held that the proper law to apply was that of the state "where the failure to receive the expected insurance proceeds was felt."[43] It went on to explain that:

> This contact is significant. This is because "persons who cause injury in a state should not ordinarily escape liabilities imposed by the local law of that state." Restatement (Second) of Conflicts § 145, comment e. Although AT & T claims that the place where the tortious conduct occurred is paramount, Comment e to Section 145 explains that the place of the tortious conduct is usually significant only if the state where the injury occurred either cannot be determined or bears little relation to the parties. In the present case, the injury occurred in Pennsylvania, a state having a significant connection to the parties. As noted above, all parties to the CGL Policies were doing business in Pennsylvania at the relevant time periods.[44]

In light of these precedents, I hold that Pennsylvania law should apply to Defendant's bad faith counterclaim. The parties do not dispute that Defendant Icon Legacy Custom Modular Homes to whom the subject policy was issued is a Pennsylvania limited lability company with its principal place of business in Selinsgrove, Snyder County, Pennsylvania.  Thus, the policy was issued to a

---

[43]   884 F. Supp. 937, 952 (E.D. Pa. 1995).

[44]   <u>Id.</u>

Pennsylvania resident, who would feel the ultimate economic impact of a coverage decision in Pennsylvania.

Further, as the declination of coverage letter suggests, "the Policy was likely delivered to the Pennsylvania address listed on the Declarations Page, and the Policy was issued from the Pennsylvania agency that is also listed on the Declarations Page. Moreover, like the policy in Village, the Policy itself stipulates that it is subject to Pennsylvania law."[45] Thus, given Pennsylvania's strong interests in protecting its own businesses against insurance bad practices as well as the numerous factual considerations suggesting that issuance of the instant policy was primarily a Pennsylvania matter, I now hold that the law of Pennsylvania should apply to Defendant's bad faith claim.

Moreover, although several of the insurance cases cited above discuss the potential for applying distinct state law to bad faith and breach of contract claims arising out of the same policy, absent significant evidence to the contrary, I find it likely that based upon these considerations, Pennsylvania law should apply to the breach of contract and any related claims advanced in this litigation.

---

[45]   ECF No. 28 Ex. 7 at 4.

### B.     Defendant Has Failed To Plausibly State A Claim For Insurance Bad Faith Under Pennsylvania Law.

In the Commonwealth of Pennsylvania, insurance bad faith claims are governed by Title 42 of the Pennsylvania Consolidated Statutes, Section 8371, which states as follows:

### § 8371.  Actions on Insurance Policies.

In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:

(1)     Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.

(2)     Award punitive damages against the insurer.

(3)     Assess court costs and attorney fees against the insurer.

"Although the bad faith statute does not include a definition of 'bad faith,' the term encompasses a wide variety of objectionable conduct."[46] As the Superior Court of Pennsylvania explained in <u>Brown v. Progressive Insurance Co.</u>, "bad faith exists where the insurer did not have a reasonable basis for denying benefits under the policy and that the insurer knew of or recklessly disregarded its lack of

---

[46]   <u>Condio v. Erie Ins. Exch.</u>, 2006 PA Super 92, ¶ 14, 899 A.2d 1136, 1142 (2006).

reasonable basis in denying the claim."[47] "Bad faith conduct also includes lack of good faith investigation into facts, and failure to communicate with the claimant."[48]

However, "mere negligence or bad judgment is not bad faith."[49] "To support a finding of bad faith, the insurer's conduct must be such as to import a dishonest purpose."[50] "In other words, the plaintiff must show that the insurer breached its duty of good faith through some motive of self-interest or ill will."[51]

To establish a claim under the Commonwealth's bad faith statute, a plaintiff "must demonstrate by clear and convincing evidence that: 1) the insurer lacked a reasonable basis for its handling of a claim; and, 2) the insurer knew of or recklessly disregarded the lack of a reasonable basis."[52] "[T]his heightened standard requires the insured to provide evidence 'so clear, direct, weighty and

---

[47]   <u>Brown v. Progressive Ins. Co.</u>, 2004 PA Super 346, ¶ 31, 860 A.2d 493, 501 (2004) (internal citations and quotation marks omitted).

[48]   <u>Id.</u>

[49]   <u>Id.</u> at ¶ 34.

[50]   <u>Id.</u> (internal quotation marks omitted).

[51]   <u>Id.</u>

[52]   <u>Moran Indus., Inc. v. Netherlands Ins., Co.</u>, 2014 WL 643723, at *9 (M.D. Pa. Feb. 19, 2014) (Brann, J.).

convincing as to enable a clear conviction, without hesitation, about whether or not the defendants acted in bad faith.'"[53]

Accordingly, because "the essence of a bad faith claim must be the unreasonable and intentional (or reckless) denial of benefits,"[54] an insurer can "defeat a claim of bad faith by showing that it had a reasonable basis for its actions."[55]

The averments in Defendant's insurance bad faith counterclaim read in their entirety as follows. The Court has substituted the names of the state court plaintiffs with those of their respective states:

> 178. Westfield does not have a good faith basis for its denial of a defense to Icon in the [Vermont] Action.
>
> 179. Westfield agreed to defend the [New York] and [Massachusetts] Actions based on similar allegations as those contained in the [Vermont] Action and has at all times continued to defend the [New York] and [Massachusetts] Actions.
>
> 180. Westfield's decision to deny a defense to Icon in the [Vermont] Action while agreeing to defend the [New York]

---

[53] Amica Mut. Ins. Co. v. Fogel, 656 F.3d 167, 179 (3d Cir. 2011) (Ambro, J.) (quoting Bostick v. ITT Hartford Grp., 56 F.Supp.2d 580, 587 (E.D.Pa.1999)).

[54] Id. (quoting UPMC Health Sys. v. Metro. Life Ins. Co., 391 F.3d 497, 506 (3d Cir.2004) (Barry, J.)).

[55] Amica, 656 F.3d at 179.

and [Massachusetts] Actions is arbitrary, capricious and/or frivolous.

181.   [The Vermont Plaintiff's] claim for property damage and/or bodily injury falls within the Policy's coverage and the products completed operations coverage and Icon is entitled to a defense for the claims asserted by [the Vermont Plaintiff].

182.   Westfield's denial of coverage for [the Vermont Plaintiff's] claim was made in bad faith.

183.   Icon is entitled to recover damages for Westfield's bad faith handling of the [Vermont] claim regardless of the law that applies.[56]

In essence, because Plaintiff has agreed to defend in certain purportedly similar matters, denial here, Defendants argue, constitutes bad faith. That is a strained argument, supported by very sparsely pled facts, even when viewed in the light most favorable to the insured.

Most apparently, even taking for granted the similarity between any set of claims, coverage of some claims and denial of others is not per se evidence of bad faith insurance practices. For example, consider a hypothetical set of five claims, all of which are "similar" but none of which the insurer believes in good faith it is legally bound to offer coverage. The insurer could, if it wanted, offer coverage in none or all or two or three of those cases. Denial would not be made in bad

---

[56]   ECF No. 29 at 35–36.

<u>faith</u> under the law. Rather, it would be made based upon a calculated business judgment, risk avoidance, litigation forecasts, etc. The point is that "similarity" among claims is a poor predictor of bad faith denials in cases where either the claims' alleged similarity or the claims' coverage under the policy is not clearly established. I perceive both of those elements to be lacking here.

Moreover, Plaintiff points out that coverage of the prior two claims to which Defendant compares the instant action was actually made under a reservation of rights. I consider it a poor use of judicial resources to create judicial rules that make it costlier for insurers to offer initial coverage under a reservation of rights letter. Were Defendant's argument accepted, insurers would be less willing to offer coverage while a claim was initially being investigated for fear that one coverage decision might be viewed as an admission as to that claim or a comparable one in related litigation. Similar policy justifications underlie determinations by the Federal Rules of Evidence mandating that subsequent remedial measures and offers to pay initial medical or hospitalization costs be deemed irrelevant in associated legal proceedings.[57]

---

[57]   <u>See</u> Fed. R. Evid. 407, 409.

Finally, I note that, most damning for Defendant's bad faith counterclaim,

Plaintiff has provided the Court a copy of its coverage denial letter.[58] Plaintiff has

accurately characterized its declination letter as "detailed."[59] The ten-page,

single-spaced letter sets forth, from Plaintiff's perspective, the applicable choice-

of-law analysis, the pertinent policy definitions, the facts surrounding the claim,

the justifications that it provides for why those facts do not trigger coverage, and

various legal decisions that it suggests support its denial of the claim.[60]

---

[58]   ECF No. 28 Ex. 7. In <u>Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.</u>, the leading decision on the issue of consideration of external documents at the motion to dismiss stage, the Third Circuit instructed as follows:

> We now hold that a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document. Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied.

998 F.2d 1192, 1196 (3d Cir. 1993) (Cowen, J.) (internal citations omitted).

Further, according to the Third Circuit, "a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." <u>Schmidt v. Skolas</u>, 770 F.3d 241, 249 (3d Cir. 2014) (internal citations and quotations omitted) (emphasis in original). This is because "the primary problem raised by looking to documents outside the complaint—lack of notice to the plaintiff—is dissipated [w]here the plaintiff has actual notice . . . and has relied upon these documents in framing the complaint." <u>Id.</u> "[W]hat is critical is whether the claims in the complaint are based on an extrinsic document and not merely whether the extrinsic document was explicitly cited." <u>Id.</u>

[59]   <u>See, e.g.</u>, ECF No. 32 at 2.

[60]   <u>See</u> ECF No. 28 Ex. 7.

"[T]hose jurisdictions which have recognized a cause of action for bad

faith conduct have cautioned that if the claim is 'fairly debatable,' no liability in

tort will arise."[61]    While I need not decide the merit of Plaintiff's justifications

for its refusal to insure Defendant as to the Vermont action, I have seen enough

to conclude that Defendant fails to plausibly state a claim that Plaintiff's denial

lacked a reasonable basis.

In Smith v. American Equity Insurance Co., for example, the United States

District Court for the Eastern District of Pennsylvania granted a defendant

insurance company's motion for summary judgment as to an unfair business

practices claim on the basis of that defendant having provided an adequate

denial letter.[62] The court in Smith explained that the letter was written by a

claims adjuster who inspected the property and determined that the water

damage for which coverage was denied was the result of decay and long-term

deferred maintenance, which was not properly classified as interior water

---

[61]  O'Donnell ex rel. Mitro v. Allstate Ins. Co., 1999 PA Super 161, ¶ 32, 734 A.2d 901, 910 (1999).

[62]  Smith v. Am. Equity Ins. Co., 235 F. Supp. 2d 410 (E.D. Pa. 2002).

damage caused by the force of the wind.[63] The court held that the letter in that case "disclose[d] a facially reasonable basis for rejecting [the] claim."[64]

Again, in <u>Smith v. State Farm Fire and Casualty Co.</u>, the same district court granted a defendant insurance company's motion for summary judgment as to a bad faith claim brought pursuant to Pennsylvania law.[65] The denial letter in that case read, in part, as follows:

> Water had been penetrating the stucco finish of the home and resulted in rot and deterioration to the sheathing. This condition was caused by a latent defect or workmanship issue in the application of the stucco. . . . State Farm is not able to extend coverage or any payments for the replacement of the stucco for any rotted sheathing found below the stucco or for any insulation which is replaced as a result of mold.[66]

The court characterized the insurance company's argument as "at least arguable" and concluded that "[the insurance company's] denial letter establishes a reasonable basis for its decision by detailing the damage to the property, the

---

[63]   <u>Id.</u> at 413.

[64]   <u>Id.</u>

[65]   <u>Smith v. State Farm Fire & Cas. Co.</u>, No. CV 15-670, 2015 WL 7568326 (E.D. Pa. Nov. 25, 2015).

[66]   <u>Id.</u> at *5.

relevant portions of the policy provisions, a summary of communication with

[the insureds], and the ultimate reason for the denial."[67]

### C. The Instant Motion Is Granted With Prejudice, Because Undue Delay Would Substantially Prejudice Plaintiff And Because Subsequent Amendment Would Be Futile.

Federal Rule of Civil Procedure 15 sets forth the mechanisms for amending

a pleading prior to trial. Section 15(a)(1) applies to amendments as a matter of

course. Amendment as a matter of course is inapplicable here, because

Defendant elected not to make such an amendment within the two time periods

provided for in that section. Section 15(a)(2), entitled "Other Amendments,"

explains that "[i]n all other cases, a party may amend its pleading only with the

opposing party's written consent or the court's leave. The court should freely

give leave when justice so requires."

The Third Circuit has "previously discussed when a court may deny leave

to amend under Rule 15(a)(2)."[68] In Shane v. Faver, for example, then Circuit

Judge Samuel A. Alito, Jr. stated that "[a]mong the grounds that could justify a

denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice,

---

[67] Id. at *5–6 ("Pennsylvania courts have declined to recognized bad faith where the insurer made a reasonable legal conclusion based on an area of the law that is uncertain or in flux.") (internal quotation marks and citations omitted).

[68] Holst v. Oxman, 290 F. App'x 508, 510 (3d Cir. 2008).

and futility."[69] "'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted."[70] "In assessing futility, the District Court applies the same standard of legal sufficiency as applies under Rule 12(b)(6)."[71]

"Moreover, substantial or undue prejudice to the non-moving party is a sufficient ground for denial of leave to amend."[72] "The issue of prejudice requires that we focus on the hardship to the [opposing party] if the amendment were permitted."[73] "Specifically, we have considered whether allowing an amendment would result in additional discovery, cost, and preparation to defend against new facts or new theories."[74]

"The decision to grant or deny leave to amend a complaint is committed to the sound discretion of the district court."[75] "Factors the trial court may appropriately consider in denying a motion to amend include undue delay,

---

[69] 213 F.3d 113, 115 (3d Cir. 2000) (quoting In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir.1997) (Alito, J.).

[70] Shane, 213 F.3d at 115.

[71] Id.

[72] Cureton v. Nat'l Collegiate Athletic Ass'n, 252 F.3d 267, 273 (3d Cir. 2001).

[73] Id.

[74] Id.

[75] Coventry v. U.S. Steel Corp., 856 F.2d 514, 518 (3d Cir. 1988).

undue prejudice to the opposing party, and futility of amendment."[76] For instance, "if the proposed change clearly is frivolous or advances a claim or defense that is legally insufficient on its face, the court may deny leave to amend."[77]

Dismissal of Defendant's bad faith claim with prejudice is warranted on two separate grounds. First, the delay associated with future amendment would severely prejudice Plaintiff by extending the period of unwarranted coverage. Second, subsequent amendment would be futile.

The longer the Court delays disposition of the bad faith claim at the motion to dismiss stage, the longer it takes the Court to reach the merits of Plaintiff's coverage decisions as to all three state litigation claims. Thus, the quite striking risk to Plaintiff is that it continues to offer coverage under a reservation of rights agreement as to claims that it is not legally bound to cover. On the other hand, delay does not prejudice the Defendant in a reciprocal fashion. Either it is

---

[76]   Averbach v. Rival Mfg. Co., 879 F.2d 1196, 1203 (3d Cir. 1989) (quoting Foman, 371 U.S. at 182.

[77]   Ross v. Jolly, 151 F.R.D. 562, 565 (E.D. Pa. 1993) (citing 6 Wright, Miller, & Kane, Federal Practice & Procedure: Civil 2d § 1487).  See also Vosgerichian v. Commodore Int'l Ltd., No. Civ. A. 92-CV-4867, 1998 WL 966026, at * 3 (E.D. Pa. Nov 6, 1998) aff'd sub nom Vosgerichian v. Commodore Int'l, 191 F.3d 446 (3d Cir. 1999).

or is not receiving the coverage it is properly owed under the policy. In fact, it can be argued that an expedited determination as to the instant denial would conceivably benefit Defendant if such denial is in fact a breach on Plaintiff's part. Otherwise, denial with prejudice simply avoids the scenario of improper insurance proceeds.

In addition, subsequent amendment would be futile. Plaintiff has proffered its denial letter, a letter integral to the bad faith claim, setting forth a good faith, reasonable basis for the ultimate decision as to the Vermont denial. Absent thoroughly pled factual evidence that the statements in the declination letter were nothing more than a ruse to wrongfully deny coverage, I would still dismiss the pending bad faith. Further, the allegations here are so sparse that they confirm the necessity of dismissal with prejudice.

IV.    CONCLUSION

Consistent with the foregoing analysis, Plaintiff's Motion to Dismiss is granted with prejudice.

An appropriate Order follows.

BY THE COURT:


<u>/s Matthew W. Brann</u>
Matthew W. Brann
United States District Judge