# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WESTFIELD INSURANCE COMPANY, | No. 4:15-CV-00539 |
| Plaintiff. | (Judge Brann) |
| v. | |
| ICON LEGACY CUSTOM MODULAR HOMES, | |
| ICON LEGACY, | |
| Defendants. | |

## MEMORANDUM OPINION

### MARCH 13, 2018

Plaintiff and Defendant filed cross-motions for summary judgment. For the reasons that follow, Plaintiff's motion will be granted, and Defendant's motion will be denied.

## I.   BACKGROUND

Defendant Icon Legacy Custom Modular Homes, LLC, ("Icon") manufactures modular home components. During the events at issue in this lawsuit, Icon was insured under a commercial general liability policy issued by Defendant Westfield Insurance Company. Among other things, the policy covered damages in the form of bodily injury and property damage, if the bodily injury or property

damage was caused by an "occurrence"[1]—*i.e.*, by an "accident."[2]  Additionally, an endorsement to the policy covered property damage to "[Icon's] work," if, *inter alia*, the property damage was "entirely the result of work performed on your behalf by a subcontractor" and was "unexpected and unintended from the standpoint of" Icon.[3]

## A. The Underlying Actions

On June 11, 2014, Icon was sued in a New York state trial court ("New York Action").[4]  The plaintiff there, Bilal Ahmed, alleges that he contracted with Icon for the purchase and assembly of a modular home, but that the home was improperly assembled, resulting in numerous deficiencies.[5]  Mr. Ahmed's complaint contains five counts against Icon: breach of contract (Count I),[6] violation of the New York Uniform Commercial Code (Count III),[7] breach of warranty (Count IV),[8] unjust enrichment (Count V),[9] and negligence (Count VI).[10]

---

[1]  ECF No. 98, Ex. B (CGL Policy) § I.A.1.b(1).

[2]  *Id.* § V.13.

[3]  ECF No. 90, Ex. C (Endorsement).

[4]  ECF No. 92 ¶ 16; ECF No. 102 ¶ 16.

[5]  ECF No. 98, Ex. D (Complaint in the New York Action) ¶¶ 12, 23-25.

[6]  *Id.* ¶¶ 20-35.

[7]  *Id.* ¶¶ 51-53.

[8]  *Id.* ¶¶ 54-62.

[9]  *Id.* ¶¶ 63-67.

[10]  *Id.* ¶¶ 68-73.

On November 4, 2014, Icon was sued again, this time in a Massachusetts state trial court ("Massachusetts Action").[11] The plaintiffs there, Anthony and Melanie Messana, also allege that they contracted with Icon and another company for the purchase and assembly of a modular home, but—as in the New York Action—that the home was improperly assembled, resulting in numerous deficiencies.[12] The Messanas' complaint contains eight counts against Icon: breach of contract (Count II),[13] breach of the implied warranty of merchantability (Count VI),[14] breach of the implied warranty of fitness for a particular purpose (Count VIII),[15] breach of express warranties (Count X),[16] negligence/gross negligence/willful and wanton conduct (Count XII),[17] negligent infliction of emotional distress (Count XIX),[18] violation of the Massachusetts Consumer Protection Law (Count XXVII),[19] and fraud (Count XXX).[20]

---

[11] ECF No. 92 ¶ 43; ECF No. 102 ¶ 43.

[12] ECF No. 98, Ex. E (Complaint in the Massachusetts Action) ¶¶ 10, 30-35.

[13] *Id.* ¶¶ 46-49.

[14] *Id.* ¶¶ 65-71.

[15] *Id.* ¶¶ 78-83.

[16] *Id.* ¶¶ 88-91.

[17] *Id.* ¶¶ 99-103.

[18] *Id.* ¶ 139-42.

[19] *Id.* ¶¶ 212-36.

[20] *Id.* ¶¶ 272-97

On November 19, 2015, Icon was sued yet again, this time in a Vermont state trial court ("Vermont Action").[21] The plaintiff there, Dagney Trevor, also alleges that she contracted with Icon and another company for the purchase and assembly of a modular home, but—as in the other actions—that the home was improperly assembled, resulting in numerous deficiencies.[22] Ms. Trevor's complaint contains seventeen counts against Icon: violation of the Vermont Consumer Protection Act (Counts I and VII),[23] breach of fiduciary duty (Count II),[24] unjust enrichment (Count III),[25] estoppel (Count IV),[26] breach of contract (Count V),[27] negligence (Count VI),[28] breach of contractual duties to a third party beneficiary (Count IX),[29] fraud (Count X),[30] constructive fraud (Count XI),[31] negligent misrepresentation (Count XIII),[32] negligent hiring, selection, and/or supervision (Count XIV),[33] breach of

---

[21] ECF No. 92 ¶ 65; ECF No. 102 ¶ 65.
[22] ECF No. 98 (Complaint in the Vermont Action) ¶¶ 6-8, 32, 78-79.
[23] *Id.* ¶¶ 128-47; 176-82.
[24] *Id.* ¶¶ 148-53.
[25] *Id.* ¶¶ 154-59.
[26] *Id.* ¶¶ 160-65.
[27] *Id.* ¶¶ 166-70.
[28] *Id.* ¶¶ 171-75.
[29] *Id.* ¶¶ 191-96.
[30] *Id.* ¶¶ 197-212
[31] *Id.* ¶¶ 213-221.
[32] *Id.* ¶¶ 226-32.
[33] *Id.* ¶¶ 235-44.

express warranties (Count XV),[34] breach of the implied warranty of merchantability (Count XVI),[35] breach of the implied warranty of fitness for a particular purpose (Count XVII),[36] breach of the implied warranty of good workmanship (Count XVIII),[37] and violations of the Magnuson-Moss Warranty Act (Count XIX).[38]

Westfield agreed to defend Icon in the New York Action and the Massachusetts Action.[39] Westfield refused, however, to defend Icon in the Vermont Action.[40]

### B. Procedural History

On March 17, 2015, Westfield filed suit against Icon in this Court, seeking a declaration that it is not obligated to defend or indemnify Icon in any of the three underlying actions.[41] Icon counterclaimed, arguing that Westfield breached its contractual obligation to defend in the Vermont Action and that such refusal to defend was in bad faith; Icon also seeks a declaration that Westfield is obligated to defend Icon in the Vermont Action.[42] This Court dismissed Icon's bad faith

---

[34] *Id.* ¶¶ 245-58.

[35] *Id.* ¶¶ 259-65.

[36] *Id.* ¶¶ 266-73.

[37] *Id.* ¶¶ 274-79.

[38] *Id.* ¶¶ 280-87.

[39] ECF No. 98, Ex. G and H.

[40] ECF No. 98, Ex. I.

[41] ECF No. 28.

[42] *Id.*

counterclaim on August 29, 2016.[43] On July 10, 2017, both parties moved for summary judgment on all remaining claims.

## II. DISCUSSION

### A. Standard of Review

Summary judgment is granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[44] A dispute is "genuine if a reasonable trier-of-fact could find in favor of the non-movant," and "material if it could affect the outcome of the case."[45] To defeat a motion for summary judgment, then, the nonmoving party must point to evidence in the record that would allow a jury to rule in that party's favor.[46] When deciding whether to grant summary judgment, a court should draw all reasonable inferences in favor of the non-moving party.[47]

### B. An Insurer's Duty to Defend

Under Pennsylvania law,[48] an insurer has a duty to defend against any suit brought against one of its insureds that potentially falls within the coverage of the

---

[43] ECF No. 47.

[44] Federal Rule of Civil Procedure 56(a).

[45] *Lichtenstein v. Univ. of Pittsburgh Medical Ctr.*, 691 F.3d 294, 300 (3rd Cir. 2012) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 252 (1986).

[46] Federal Rule of Civil Procedure 56(c)(1); *Liberty Lobby*, 477 U.S. at 249.

[47] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

[48] Both parties have utilized Pennsylvania law when briefing the issues under consideration; this Court, therefore, will do the same.

insured's policy.[49] To determine whether this duty is triggered, a court looks the factual allegations of the underlying plaintiff's complaint as well as the language of the policy, and determines whether any potential liability on the insured's behalf would be covered by the policy.[50] If such a duty is found to exist, the insurer must defend against the suit "until it becomes absolutely clear that there is no longer a possibility that the insurer owes its insured a defense."[51]

Commercial general liability policies such as the one at issue in this case do not cover claims for breach of contract or breach of warranty,[52] nor do they cover claims for fraud or other intentional conduct.[53] Pennsylvania courts have determined that such policies also do not cover damages to a contractor's work caused by faulty workmanship, whether that work was performed by the general contractor[54] or a subcontractor.[55]

---

[49] *Gedeon v. State Farm Mut. Auto. Ins. Co.*, 410 Pa. 55, 58 (1963); *see also Ramara, Inc. v. Westfield Ins. Co.*, 814 F.3d 660, 673 (3d Cir. 2016).

[50] *Ramara*, 814 F.3d at 673-74.

[51] *Id.*; *see also American and Foreign Ins. Co. v. Jerry's Sport Center, Inc.*, 606 Pa. 584, 609 (2010) ("The question of whether a claim against an insured is potentially covered is answered by comparing the four corners of the insurance contract to the four corners of the complaint.")

[52] *Nationwide Mutual Insurance Co. v. CPB International, Inc.*, 562 F.3d 591, 597 (3d Cir. 2009).

[53] *Gene & Harvey Builders, Inc. v. Pennsylvania Manufacturers' Association Insurance Co.*, 512 Pa. 420, 427 (1986).

[54] *Kvaerner Metals Division of Kvaerner U.S., Inc. v. Commercial Union Insurance Co.*, 589 Pa. 317 (2006)

[55] *Millers Capital Insurance Co. v. Gambone Brothers Development, Inc.*, 941 A.2d 706, 713, 715 (Pa. Super. Ct. 2007) ("Both complaints aver [that the insured] and/or its subcontractors built homes with defective stucco exteriors, windows, and other artificial seals intended to

## C. Application to the Underlying Actions

All three of the underlying actions are, at heart, based on faulty workmanship; therefore, Westfield is not obligated to defend Icon in any of them. As noted above, Icon's main policy covers Icon for bodily injury and property damage caused by an "occurrence." Because faulty workmanship may not be classified as an "occurrence," Icon does not rely on this provision.[56] Instead, Icon points to the endorsement, which (as noted *supra*) covers damage that is "unexpected and unintended from [Icon's] standpoint." This provision, however, is unavailing.

When concluding that faulty workmanship is not an "occurrence" for purposes of a commercial general liability policy, the Pennsylvania Supreme Court, in *Kvaerner Metals Division of Kvaerner U.S., Inc. v. Commercial Union Insurance Co.*, first noted that "occurrence" was defined by the policy at issue as "an accident."[57] That court then turned to the dictionary definition of "accident" ("an unexpected an undesirable event, or something that occurs unexpectedly or unintentionally"), and declared that "[t]he key term" in such definition was

---

protect the home interiors from the elements. Both complaints are based on claims for faulty workmanship. . . . Yet, claims predicated on faulty workmanship cannot be considered 'occurrences' for purposes of an occurrence based CGL policy as a matter of plain language and judicial construction.")

[56] As the insured, Icon bears the burden of establishing coverage. *Nationwide Mutual Insurance Co. v. Cosenza*, 258 F.3d 197, 206 (3d Cir. 2001).

[57] *Kvaerner*, 809 A.2d at 332.

"unexpected," which "implies a degree of fortuity that is not present in a claim for faulty workmanship."[58]

Since faulty workmanship is not an "occurrence" because it is not "unexpected," it cannot be covered by an endorsement which requires, as a prerequisite to coverage, that the damage at issue be "unexpected." Stated another way, faulty workmanship—whether by Icon or its subcontractors—is, as a matter of law, not unexpected, and is therefore not covered by the endorsement. Consequently, this Court will declare that Westfield has no duty to defend Icon in any of the three underlying actions, and will enter summary judgment against Icon, in Westfield's favor.

## III. CONCLUSION

For the reasons stated above, Westfield's Motion for Summary Judgment will be granted, and Icon's will be denied. An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge

---

[58] *Id.* at 333.